**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

REBECCA SOMOGY,

    Plaintiff,

vs.                                                    CASE NO. 3:08-cv-269-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), which seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for Disability Insurance Benefits (DIB). Plaintiff filed her Memorandum in Opposition to the Commissioner's Decision (Doc. #13), and Defendant filed his Memorandum in Support of the Commissioner's Decision (Doc. #14).[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated June 2, 2008 (Doc. #8). The Commissioner has filed the transcript of the underlying administrative record and proceedings.[2]

The Court has reviewed the record and has given it due consideration in its entirety, including arguments presented by the parties in their briefs and materials provided in the

---

[1]Hereafter, the Court will identify Plaintiff's brief as "P's Brief" and Defendant's brief as "D's Brief."

[2]Hereafter, the Court will identify the Transcript as "Tr." followed by the appropriate page number.

transcript of the underlying proceedings.  Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in making its determinations.  Accordingly, the Court has decided the matter on the written record.  For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff Rebecca Somogy filed an application for disability insurance benefits on December 7, 2004, alleging disability beginning May 21, 2002 (Tr. 53).[3]  Plaintiff's application was initially denied on April 20, 2005, (Tr. 45-46) and upon reconsideration on July 18, 2005 (Tr. 40-41).  Thereafter, Plaintiff requested a hearing, which was held on March 20, 2007, before Administrative Law Judge ("ALJ") John D. Thompson, Jr. (Tr. 382-442).  At the hearing, Plaintiff appeared and testified, as did vocational expert (VE) Robert Bradley.  Following the hearing, the ALJ denied Plaintiff's application for DIB in a decision dated August 28, 2007 (Tr. 13-22).  The Appeals Council (AC) denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 4-6). Thereafter, Plaintiff filed the instant action in federal court on March 14, 2008 (Doc. #1).

## STANDARD OF REVIEW

A plaintiff is entitled to disability benefits when he or she is unable to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to either result in death or last continuously for a period

---

[3]The Court notes the reference to Plaintiff's filing date and alleged date of disability onset is set forth in the electronic data entry on the referenced transcript page.  The Court was unable, however, to locate a copy of Plaintiff's DIB application in the record.

2

of not less than 12 months. 42 U.S.C. § 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.[4] The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). A plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

---

[4]Unless otherwise specified, all references to 20 C.F.R. will be to the 2008 edition.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that a plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all disability cases, a plaintiff bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that she believes will prove she suffers from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## ANALYSIS

Plaintiff Rebecca Somogy was born on April 5, 1961, and at the time of the ALJ's decision was forty-six years old (Tr. 387). Plaintiff has past relevant work experience as a medical liaison, a medical receptionist and a medical receptionist/billing clerk (Tr. 58, 68). In denying Plaintiff's claim, the ALJ found Plaintiff was capable of returning to her past relevant work (Tr. 21, Finding No. 6). The ALJ determined Plaintiff was not disabled at step

4

four of the sequential evaluation process and therefore did not proceed to step five. *Crayton v. Callahan*, 120 F.3d at 1219 (if a claimant is unable to do past relevant work, then the examiner proceeds to the fifth step to evaluate if the claimant can do other work in the economy).

In her Disability Report-Adult dated January 20, 2005, Plaintiff alleged she was unable to work due to fibromyalgia and restless leg syndrome (Tr. 66-67). In her Disability Report-Appeal dated May 5, 2005, Plaintiff alleged she had experienced changes in her condition since the prior report (Tr. 86). More specifically, Plaintiff alleged she had experienced tingly, burning, and painful sensations from her legs to her hip since February 28, 2005 (Tr. 86) and "more frequent attacks," worsening pain, and exhaustion since April 2005 (Tr. 86). In her Disability Report-Appeal dated July 24, 2005, Plaintiff alleged she was limited by several new conditions since the prior disability report, namely cervical spondyloarthritis, diabetes, and scoliosis (Tr. 99).

Plaintiff raises two issues on appeal. First, Plaintiff claims the ALJ erred by failing to give proper weight to the opinions of Plaintiff's treating and examining physicians and thereby determined a deficient residual functional capacity (RFC) for Plaintiff (P's Brief at 9). Second, Plaintiff claims the ALJ erred by failing to perform a proper credibility analysis regarding Plaintiff's headaches (P's Brief at 13-14). Defendant asserts the ALJ's final decision is supported by substantial evidence (D's Brief at 4). More specifically, Defendant claims the ALJ properly considered and evaluated Plaintiff's subjective complaints and properly addressed the opinions of Plaintiff's treating physicians and Plaintiff's RFC (D's Brief at 5-17).

**Residual Functional Capacity**

The first issue is whether the ALJ gave proper weight to the opinions of Plaintiff's treating and examining physicians in determining Plaintiff's RFC. The RFC is an assessment based on all relevant evidence of a plaintiff's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the physicians' evaluations of a plaintiff's condition and the medical consequences thereof. *Id.* If a plaintiff can still do the kind of work he or she did in the past, then the Regulations require that he or she be found not disabled. In evaluating a plaintiff's RFC, the ALJ must consider all of a plaintiff's impairments, including subjective symptoms such as pain.

In determining a plaintiff's RFC, the opinion, diagnosis, and medical evidence of a treating physician are entitled to substantial or considerable weight, unless there is good cause to do otherwise. 20 C.F.R. § 404.1527(d)(2); *Lewis*, 125 F.3d at 1440. The United States Court of Appeals for the Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is not bolstered by the evidence or is contrary to the evidence, or when the treating physician's opinion is inconsistent with his or her own medical records for the claimant. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Furthermore, if an ALJ elects to actually *disregard* the medical opinion of a treating physician, then the ALJ must clearly articulate the reasons for so doing. *Id.*(emphasis added).

The ALJ found Plaintiff's history of fibromyalgia, restless leg syndrome, degenerative disc disease at C5-6, lumbar scoliosis, and medial meniscus tear of the left knee were

6

severe impairments (Tr. 15).[5]  When considering Plaintiff's impairments at step three of the sequential evaluation process, the ALJ determined Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. . ." (Tr. 15).  The ALJ noted that this finding was consistent with that of the Disability Determination Services (DDS) physicians (Tr. 15).  In addition, the ALJ found Plaintiff retained the RFC to perform a range of light work that included the ability to sit and stand/walk for up to 6 hours in an 8 hour working day (Tr. 15).[6]  The ALJ limited Plaintiff to occasional bending, stooping, crouching, crawling, kneeling and climbing, and imposed additional limitations requiring Plaintiff to work in a temperature controlled environment and to use a hand held cane (Tr. 15-16).  At step four, the ALJ determined Plaintiff was capable of performing her past relevant work as a medical clerk, medical secretary, receptionist and information clerk (Tr. 21), positions which the vocational expert testified are considered sedentary under the Dictionary of Occupational Titles (Tr. 436-37).  Lastly, the ALJ found Plaintiff had not been under disability from May 21, 2002 through the date of his decision (Tr. 22).

In this case, the record is replete with residual functional capacity assessments from various medical providers, consultants and DDS reviewing physicians.  Plaintiff claims the

---

[5]The Court notes Plaintiff did not challenge the ALJ's finding that Plaintiff had "no manipulative, communicative or mental impairments" (Tr. 16).

[6]Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. §§ 404.1567(b); 20 C.F.R. 416.967(b).  A job in the light work category may still require a good deal of walking or standing, or it may involve sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*  To be considered capable of performing a full or wide range of light work, a plaintiff must have the ability to do substantially all of the aforementioned activities.  *Id.*

7

ALJ's residual functional capacity assessment of her ability to work was deficient in that the ALJ did not have good cause to give the opinions of two of Plaintiff's treating physicians and one examining physician less than substantial or considerable weight when ascertaining Plaintiff's RFC. The Court finds this argument is without merit. The ALJ not only referenced evidence to support Plaintiff's assessed RFC, but also included a thorough review of the record evidence in his decision to deny benefits (Tr. 17-21). Moreover, the ALJ gave proper consideration to the opinion, diagnosis and medical evidence of Plaintiff's treating and examining physicians, and he clearly articulated good cause for giving the opinions of Plaintiff's treating and examining physicians less than substantial or considerable weight (Tr. 17-21).

Between September 2000 (Tr. 122) and October 2004 (Tr. 110), Plaintiff was seen regularly by her primary care physician Dr. Susan Salehi, M.D., in Orange Park, Florida (*also see*, Tr. 110-123, 152-157).[7] Dr. Salehi saw Plaintiff for a wide variety of general complaints, such as body aches (Tr. 112, 114, 118, 122, 152, 153), flu-like symptoms (Tr. 110, 120, 153), and sinus congestion (Tr. 123, 152, 153), as well as for phobia (Tr. 110), depression (Tr. 154, 155, 157), shoulder pain to rule out a torn rotator cuff (Tr. 115), an abscessed broken tooth (Tr. 117), and an insect bite (Tr. 121). In 2002, Dr. Salehi diagnosed Plaintiff with fibromyalgia when other diagnoses had been ruled out (Tr. 17, 114, 282, 394) and referred Plaintiff to rheumatologist Dr. Mirna Barakat, M.D., for further evaluation and treatment of Plaintiff's fibromyalgia and restless leg syndrome (Tr. 113).

---

[7]The Court notes there are no medical records from Dr. Salehi from October 7, 2004 (Tr. 110) until March 6, 2007 (Tr. 368) when Dr. Salehi wrote Plaintiff an order for X-rays of the right knee due to pain and tenderness. There are no office notes for March 6, 2007; only the prescription order for the X-ray is in the record (Tr. 368).

The record indicates Plaintiff last saw Dr. Salehi on October 7, 2004, for a runny nose and itchy eyes (Tr. 110). Apparently at the request of Plaintiff's counsel, Dr. Salehi completed an RFC form on March 8, 2007, in which she marked that Plaintiff could continuously sit for 30 minutes at one time and stand for 10 minutes at one time and that Plaintiff could sit and stand/walk for less than 2 hours total in an 8 hour working day (Tr. 284). In addition, Dr. Salehi noted that Plaintiff had impaired motor skills and therefore could do none of the following in an 8 hour day: 1) grasping, turning, or twisting objects with her right hand, 2) fine manipulations with her fingers, or 3) reaching with her right arm (Tr. 285).

The ALJ gave little weight to Dr. Salehi's March 2007 RFC opinion (Tr. 20). The ALJ found Dr. Salehi's opinion unsupported by the record evidence and was primarily based on Plaintiff's subjective complaints (Tr. 20). Moreover, the ALJ gave no weight to Dr. Salehi's extreme limitation regarding Plaintiff's motor skills (Tr. 21). The ALJ correctly noted that restriction of Plaintiff's motor skills was not supported by the case record, in that Plaintiff's entire neurological work-up (including examination and testing) in 2006 was normal, Plaintiff testified she was capable of doing household activities and chores, and Plaintiff is able to use a cane to ambulate (Tr. 21). Further, this Court's independent review of Dr. Salehi's treatment notes of Plaintiff finds no evidence Plaintiff ever complained of any problems with the use of her hands. The case file does, however, contain information regarding an injury in 1986 when Plaintiff injured the third finger on her right hand (Tr. 168, *see also* Tr. 171). Irrespective of this injury, Plaintiff held several jobs thereafter that required the use of her

hands (*see* Tr. 68; a listing of jobs held is provided).[8]  Thus, the Court finds good cause existed for the ALJ to give Dr. Salehi's opinion less than substantial or considerable weight.

Plaintiff was also seen regularly by Dr. Mirna Barakat, M.D., at the Arthritis & Rheumatology Clinic between late 2003 to early 2007 (Tr. 124, 165-168, 288-298, 380). Dr. Barakat diagnosed Plaintiff with fibromyalgia and restless leg syndrome (Tr. 124, 165-167, 289-295, 310); however, she also diagnosed Plaintiff with sleep problems during 2004 (Tr. 124) and fatigue during 2004 and 2005 (Tr. 165, 293).  As treatment for Plaintiff's condition, Dr. Barakat prescribed physical therapy, including swimming, range of motion instruction and exercise (Tr. 165-67, 289-90), over the counter Aleve or Advil, Klonopin as needed, and Flexeril as needed.  Dr. Barakat also referred Plaintiff back to neurology for her complaints of balance, tripping and falling problems (Tr. 290-91, 294).  On March 9, 2007, Dr. Barakat completed an RFC form on which she indicated Plaintiff could sit continuously for 5-10 minutes at one time and stand for 10 minutes at one time (Tr. 300). Dr. Barakat stated Plaintiff was unable to work at any job because she must walk every 10 minutes for 5-10 minutes and needs to change positions often (Tr. 300).

The ALJ implies he gave little weight to Dr. Barakat's overall opinion that Plaintiff would not be able to sustain sedentary work (Tr. 20).  The ALJ found Dr. Barakat's opinion and RFC assessment, like that of Dr. Salehi, unsupported by the record evidence and primarily based on Plaintiff's subjective complaints (Tr. 20).  The ALJ also stated Plaintiff

---

[8]The most detailed account of Plaintiff's possible hand impairment is found within Dr. Choisser's March 7, 2007 examination notes.  Plaintiff told Dr. Choisser that she has "*some* difficulty typing and *some* numbness in the last two fingers" as a result of the injury (Tr. 274, emphasis added).  Dr. Choisser's exam on that date revealed 4/5 grip in Plaintiff's hands bilaterally and a "contracture deformity of the proximal joint of each of the last 2 fingers of the right hand," but "no gross muscular atrophy" (Tr. 275).

may not have seen Dr. Barakat from October 2003 until March 2007 when the RFC form was completed (Tr. 20). However, the Court finds this statement incorrect in that the record reflects Plaintiff visited Dr. Barakat several times during 2004, 2005, and 2006 (*see, e.g.*, Tr. 165-166, 289-296, 310). Irrespective of this misstatement, Dr. Barakat's medical reports during these years offer no additional support for her opinion as expressed on the RFC form. Thus, the Court finds the ALJ had good cause to give Dr. Barakat's opinion less than substantial or considerable weight.

In 2005, Plaintiff was referred to Dr. Victor Maquera, M.D., at the Jacksonville Neurological Clinic, and was initially treated for fibromyalgia and restless leg syndrome (Tr. 221). Dr. Maquera ordered MRIs of the lumbar, thoracic and cervical spine, which revealed mild scoliosis (Tr. 219-220, 246), and an MRI of the brain, which was normal (Tr. 266). Dr. Maquera suspected Plaintiff had peripheral neuropathy (Tr. 217); however, this diagnosis was ruled out after Plaintiff's nerve conduction studies on May 13, 2005 (Tr. 229) and October 27, 2006 (Tr. 262) were normal. Throughout 2006, Dr. Maquera also treated Plaintiff for cervical spondyloarthritis (Tr. 240, 254-256), mood disorder (Tr. 254), and migraines (Tr. 254-256).

On February 13, 2007, Dr. Maquera completed an RFC form on which he noted Plaintiff could sit and stand continuously for more than 2 hours at one time (Tr. 270). He also found Plaintiff was able to sit for at least 6 hours and stand/ walk for 2 hours in an 8 hour working day (Tr. 270-72).[9] He specifically noted that these limitations were based on Plaintiff's subjective complaints of pain and knee weakness and were not based on

---

[9]It appears both Dr. Maquera and his ARNP (Adult Registered Nurse Practioner), Megan Weigel, signed the RFC form (Tr. 272).

11

objective testing (Tr. 270). As such, the ALJ gave little weight to Dr. Maquera's RFC assessment (Tr. 20). Although Plaintiff did not challenge the weight given to Dr. Maquera's medical opinion, the Court nevertheless finds the ALJ had good cause to give Dr. Maquera's opinion less than substantial or considerable weight because Dr. Maquera stated his RFC assessment was wholly based on Plaintiff's subjective complaints and because the opinion was contrary to Dr. Maquera's medical records of Plaintiff's condition.

Plaintiff saw Dr. William Choisser, M.D., at Choisser Medical Group, for a consultative physical examination on March 29, 2005 (Tr. 176-180). Overall, the examination results were unremarkable (Tr. 176-177). Dr. Choisser diagnosed Plaintiff with restless leg syndrome responsive to Klonopin and fibromyalgia, progressive (Tr. 177). Plaintiff saw Dr. Choisser again on March 7, 2007 (Tr. 274).[10] During this visit, Dr. Choisser examined Plaintiff and again the examination results were within essentially normal limits; however, Dr. Choisser did note Plaintiff had a bruise on her ankle from a fall, a deformity on fingers on her right hand from a prior injury, and positive straight leg raising tests at 30-40 degrees bilaterally (Tr. 274-275).

During this visit, Dr. Choisser completed an RFC form for Plaintiff's counsel and limited Plaintiff's ability to continuously sit or stand to 30 minutes at one time (Tr. 278). Dr. Choisser marked that Plaintiff would only be able to sit or stand/walk for less than 2 hours total in an 8 hour working day and could occasionally lift less than 10 lbs. (Tr. 278). The

---

[10]There is a discrepancy as to the year of this exam (*see* Tr. 274 and 280). Dr. Choisser's letter to Plaintiff's attorney, wherein the exam results are disclosed, is dated March 7, 2006 (Tr. 274). However, in P's Brief Plaintiff's attorney makes reference to a 2007 examination (P's Brief at 3). Thus, it appears from the record that this exam occurred on March 7, 2007, not March 7, 2006.

ALJ gave little weight to Dr. Choisser's overall opinion that Plaintiff would not be able to sustain sedentary work because Dr. Choisser's opinion was unsupported by his objective medical findings or by the record in general (Tr. 20). The Court agrees with the ALJ.

Plaintiff argues there are marked similarities between the RFC assessments from Dr. Salehi, Dr. Barakat, and Dr. Choisser, which are not reflected in the ALJ's determination of Plaintiff's RFC (P's Brief at 11). The Court notes there are some similarities among the RFCs from those physicians; however, the ALJ found the extreme limitations in the RFCs from these providers unsupported by the evidence and contrary to their respective medical records. The Court agrees. Among the evidence the ALJ relied upon to support his decision includes: the fact that Plaintiff is able to drive, cook, and do household chores (Tr. 17), normal MRIs of the lumbar and thoracic spine except for mild scoliosis (Tr. 18), normal consultative examinations by Dr. Choisser (Tr. 18), normal nerve conduction studies (Tr. 18), effective treatment of restless leg syndrome (Tr. 18), mild arthritis in Plaintiff's right knee (Tr. 20), and a normal MRI of the brain (Tr. 20). In addition, the ALJ found the RFCs from the DDS physicians who reviewed the record to be consistent with the evidence and the RFC for a wide range of light work (Tr. 15).[11] Thus, the Court finds the ALJ had good cause to give the opinions of Plaintiff's treating and examining physicians less than substantial or considerable weight, and the assessed RFC is supported by substantial evidence.

---

[11]Both DDS physicians found Plaintiff retained the RFC to perform light work. The first DDS reviewer, whose signature is illegible, found Plaintiff could stand/walk or sit for 6 hours in an 8 hour working day (Tr. 196). The second DDS physician, Dr. Brigety, ascertained Plaintiff could stand/walk for 2-4 hours in an 8 hour working day and sit for 6 hours in an 8 hour working day (Tr. 233).

**Credibility as to Plaintiff's Headaches**

The second issue is whether the ALJ properly evaluated Plaintiff's credibility regarding the frequency of her headaches (P's Brief at 13). The ALJ must consider all of a plaintiff's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1520. In so doing, the ALJ must apply the Eleventh Circuit's three-part pain standard, which requires: (1) evidence of an underlying medical condition and either, (2) objective medical evidence substantiating the severity of the pain asserted or, (3) the objective medical condition is so severe that it can be reasonably expected to give rise to the pain asserted. *Foote*, 67 F.3d at 1560.

At times, a plaintiff's impairment may be more severe than the objective medical evidence shows; therefore, the ALJ must consider the following factors when assessing a plaintiff's credibility: 1) a plaintiff's daily activities, 2) location, duration, frequency, and intensity of the symptoms, 3) precipitating and aggravating factors, 4) type, dosage, effectiveness, and side effects of medication, 5) treatment other than medication, 6) any measures other than treatment used to relieve symptoms, and 8) any other factors concerning a plaintiff's functional limitations and restrictions. 20 C.F.R. § 404.1529(c). Where the ALJ decides not to credit a plaintiff's testimony about an asserted condition, the ALJ must articulate specific and adequate reasons based on substantial evidence for so doing, or the record must be obvious as to the credibility finding. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

In this case, a review of Plaintiff's medical records shows scant reference to headaches. Plaintiff saw Dr. Michael S. Gilligan, M.D., on May 22, 2000, for a questionable abnormality in her left breast (Tr. 143). During this visit, Plaintiff reported suffering from occasional mild headaches (Tr. 143). Plaintiff's medical records from Dr. Salehi, her primary care physician, do not show complaints of headaches (*see, e.g.*, Tr. 110-123, 152-157), and Dr. Salehi's RFC assessment makes no mention of headaches whatsoever (Tr. 282). During Plaintiff's treatment with Dr. Barakat, there is reference headaches with the osteoarthritis neck pain during her October 7, 2005 visit (Tr. 293), but Dr. Barakat's notes are otherwise devoid of any mention of headaches. Dr. Barakat's RFC assessment, however, did refer to headaches as one of Plaintiff's symptoms (Tr. 298).

Plaintiff herself initiated an internet medical form on October 19, 2004, which is the SSA Form 3368, Disability Report-Adult. On that date, there is no mention of headaches in Plaintiff's description of symptoms (Tr. 66-72). On February 20, 2005, Plaintiff completed a Function Report-Adult, and again did not refer to headaches (Tr. 73-80). Similarly, Plaintiff did not report headaches on her Disability Report-Appeal dated May 5, 2005 (Tr. 86-92), but did note, "I feel a constant throb of pain from my head to my toes" (Tr. 91). On her Disability Report-Appeal dated July 24, 2005 (Tr. 99-105), Plaintiff reported taking Aleve for headaches (Tr. 102).

Plaintiff did not mention headaches during either of her consultative examinations with Dr. Choisser (Tr. 176-77, 274-75). Plaintiff's medical records from Dr. Maquera do show several references to headaches, and Plaintiff reported having headaches up to three times per week on October 18, 2006 (Tr. 256) and even daily on October 31, 2006 (Tr. 254). However, Dr. Maquera noted Motrin was the most effective treatment for Plaintiff's

15

headaches (Tr. 254) and ordered a change in Plaintiff's antidepressant medication in an effort to decrease the frequency of her headaches (Tr. 255). The October 21, 2006 MRI of Plaintiff's brain, ordered by Dr. Maquera due to the complaint of increasing headaches, showed no significant abnormalities (Tr. 266).

In addition to Plaintiff's medical records, the ALJ considered Plaintiff's subjective statements when he assessed Plaintiff's credibility, including the intensity, persistence and limiting effects of Plaintiff's headaches. Plaintiff testified that prior to treating with Dr. Maquera in October 2006, she had "regular headaches," which caused her to become nauseous if she moved her head (Tr. 414). Plaintiff further testified her headaches had worsened since October 2006, but she made the choice to stay on Paxil, even though Dr. Maquera recommended she switch antidepressant medications (Tr. 412). Plaintiff testified she would rather deal with the headaches than change medications because she was told there would be "three weeks of hell" when changing from one medication to the other (Tr. 412-415).

The ALJ also properly considered additional factors, as required by the Regulations, such as Plaintiff's activities of daily living, and found them inconsistent with Plaintiff's asserted frequency of headaches. In addition, during the hearing, the ALJ questioned Plaintiff and Plaintiff's attorney regarding the apparent lack of physical or clinical findings as to Plaintiff's asserted symptoms, including her headaches (Tr. 415-417). The ALJ noted a gap in Plaintiff's treatment with Dr. Maquera, the neurologist, which is inconsistent with Plaintiff's testimony (Tr. 415-417). Thus, substantial evidence, including an analysis of Plaintiff's medical records and the lack thereof, her testimony, and the record as a whole,

16

supports the ALJ's finding that Plaintiff's claims of headache pain were not entirely credible as to the asserted intensity, persistence, limiting effects, and frequency (Tr. 19, 21).

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is hereby **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file. Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 23rd day of February, 2009.

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record